WILLIAMS B/N/F V. POHLMAN D/B/A ANIMAL MEDICAL CLINIC ET AL.

[No. 1168A182. Filed April 21, 1970. Rehearing denied May 12, 1970. Transfer denied August 3, 1970.]

*Hilbert L. Bradley,* Gary, for appellant.

*James H. Pankow,* South Bend, for appellee-Pohlman.

*Leon R. Kaminski* and *Gene M. Jones, Newby, Lewis & Kaminski,* LaPorte, and *Paul Reed,* Knox, for appellees-Hunerjager.

HOFFMAN, P.J.—This appeal arose from a finding by the trial court at the close of appellant's evidence, in favor of appellee-Jean Hunerjager, and judgment for the other appellees following the trial to the court, without the intervention of a jury.

The facts most favorable to appellees material to our consideration are as follows:

Appellant's father, Clifford Williams, Sr., responding to an advertisement seeking someone to adopt a German Shepherd dog, called at the Animal Medical Clinic on January 3, 1965. Mr. Williams had raised several German Shepherds prior to this time.

Appellee-Pohlman agreed to permit the Williams family to take the dog—"Dart"—for a trial weekend. The dog was at the clinic as a result of the action of its owners, the Hunerjagers. There was evidence introduced to the effect that the Hunerjagers had placed "Dart" with the clinic for adoption because in the apartment in which appellees Hunerjagers were then residing pets were not permitted.

Mr. Hunerjager testified that he had instructed the receptionist at the clinic, Mrs. Cappy, not to allow an adoption without his "express consent." Nonetheless, "Dart" went home with the Williams and two days later attacked appellant, Clifford Williams, Jr., who was aged four at the time.

Immediately prior to the attack, "Dart" had been attempting to "steal" food from the plate of appellant-Williams, Jr. Appellant's mother had plugged in a floodlight to illuminate the scene for some home moviemaking. The attack was apparently coincident with the flash of the floodlights.

As a result of the attack, Williams, Jr., was severely bitten and lacerated around the head and neck. Immediate surgery was required.

Appellant's amended complaint alleged that both the Hunerjagers and Dr. Pohlman, d/b/a Animal Medical Clinic, were liable for keeping a vicious dog with prior knowledge of its propensities.

Appellant's motion for a new trial was based on the sole ground that the decision of the court is contrary to law.

As a basis for this ground, appellant then cites five specific allegations of error:

1. That a theory of common-law keeper of vicious and dangerous animals includes bailment and negligence;

2. That appellees waived their right to object to appellant's theory of "keeper" since they failed to file a pre-trial motion requiring appellant to elect a specific theory of the case;

3. That appellees maintained a nuisance by keeping the animal with knowledge of its dangerous propensities;

4. That appellee-Pohlman breached a duty to disclose the dog's dangerous propensities; and

5. That appellant-Williams, Jr. was conclusively presumed to be *non-sui-juris*.

In his motion for a new trial appellant did not raise as error the entry of judgment in favor of appellee-Jean Hunerjager, or the sustaining of the motion for a finding in her behalf at the close of appellant's evidence.

The central question thus presented is whether Dr. Pohlman, as bailee of "Dart", could be held liable as a keeper of a vicious and dangerous animal, or if Leo Hunerjager could be liable as owner on the same theory.

In *Artificial Ice & Cold St. Co.* v. *Martin, Admx.*, 102 Ind. App. 74, 77, 198 N. E. 446, 448 (1936), (Transfer denied), this court established the following rules governing the liability of owners of domestic animals, based on *Hosmer* v. *Carney et al.*, 228 N. Y. 73, 126 N. E. 650 (1920):

A. An owner is not responsible for an injury unless the vicious propensities of the animal are known to him, or by the exercise of reasonable care the same could have been ascertained;

B. If the animal is delivered by the owner to another, he must inform such person of the animal's vicious characteristics, so far as known or ascertainable by the exercise of reasonable care;

C. If such information be given, or the person to whom the animal is delivered knows, or before injury ascertains, the vicious character of the animal, the owner is not liable;

D. The liability of the owner is predicated upon his omission of duty in not imparting the information, but such omission does not render him liable if the negligence of the injured party contributed to the injury.

Appellant's contention that he was *non-sui-juris* is not disputed and we are, thus, not concerned about the application of number five above.

Appellees argue that under the theory of "keeper" that appellant was, in fact, the "keeper" of the dog at the time of the accident. 3 C.J.S., *Animals*, § 165(b), at 1266, defines "keeper" as "the one who harbors or protects" an animal.

A *keeper* need not be the *owner* of an animal. The fact is that the *keeper*, for purposes of imposition of liability, is one who exercises control over an animal on his premises with knowledge of its presence, whether he be an owner, or bailee. In the instant case, under the facts in evidence, Williams, Sr. was, in fact, the "keeper" of "Dart." There was no error in the trial court's ruling on this issue. Had Williams, Sr. been an agent or employee of the Hunerjagers or Dr. Pohlman, under the doctrine of "respondeat superior", the employer or principal would be liable as the keeper. But in the instant case, the bailment was, at best, a

bailment for the benefit of the bailee and there was no bar to the bailee in this case becoming a "keeper."

Liability, if any, in the instant case, is based on the failure to disclose the dangerous propensities of the animal, as set forth in number four above. As this court noted in *Artificial Ice, supra,* at 78 of 102 Ind. App., at 448 of 198 N. E., quoting from the earlier case of *National Surety Co.* v. *State,* 181 Ind. 54, at 65, 103 N. E. 105, at 109 (1914), the questions presented by the rules above are questions of fact, not of law, and " '. . . where the facts are such that men of equal fairness and intelligence may draw different conclusions, the finding of the trial court will not be disturbed on appeal.' *Keltner* v. *Patton* (1933), 204 Ind. 550, 555 [556], 185 N. E. 270."

We have carefully reviewed the evidence in the record before us in the instant case and conclude there is sufficient evidence to sustain the judgment of the trial court on this issue.

On April 29, 1969, appellees filed herein motion to dismiss appeal or, in the alternative, to affirm the judgment of the trial court for the reasons 1) the assignment of errors does not appear in the appellant's brief; and 2) appellant failed to attach the memorandum required by Rule 1-14B, Rules of the Supreme Court of Indiana, to his motion for new trial. On June 5, 1969, an order was entered herein denying the motion to dismiss, and holding in abeyance a ruling on the motion to affirm the judgment of the trial court. On June 6, 1969, appellant filed "Assignment of Errors Amendment" to his appellant's brief.

The failure to file the memorandum required by Rule 1-14B, *supra,* is jurisdictional, *Anderson* v. *Irwin,* 142 Ind. App. 302, 234 N. E. 2d 276, 13 Ind. Dec. 266 (1968), and requires us to sustain the motion to affirm. *Anderson* v. *Irwin, supra; Resolute Insurance Co. of Hartford, Conn.* v. *Lippman,* 143 Ind. App. 442, 241 N. E. 2d 160, 15 Ind. Dec. 567 (1968).

For the reasons hereinabove set forth the motion to affirm is sustained, and the judgment of the trial court is affirmed.

Motion to affirm sustained; judgment affirmed.

Pfaff and White, JJ., concur. Sharp, J., concurs in result, with opinion.

### CONCURRING OPINION

SHARP, J.—I concur in the result in the opinion of Presiding Justice Hoffman and would base such result solely on the failure of Appellant to comply with Rule 14B of the Rules of our Supreme Court. Therefore, the discussion regarding the merits is not necessary and I do not concur in that part of the majority opinion.

NOTE.—Reported in 257 N. E. 2d 329.