FILED

Apr 14 2023, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| | |
|---|---|
| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| Patrick B. McEuen<br>Portage, Indiana | Matthew Miller<br>Coots Henke & Wheeler, P.C.<br>Carmel, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tiffance Fields,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Constance Gaw,<br>*Appellee-Defendant.* | April 14, 2023<br><br>Court of Appeals Case No.<br>22A-CT-2687<br><br>Appeal from the Lake Superior<br>Court<br><br>The Honorable Bruce D. Parent,<br>Judge<br><br>Trial Court Cause No.<br>45D11-2101-CT-67 |

**Opinion by Judge Riley.**
Chief Judge Altice and Judge Pyle concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Tiffance Fields (Fields), appeals the trial court's summary judgment in favor of Appellee-Defendant, Constance Gaw (Gaw).

We affirm.

## ISSUE

Fields presents this court with two issues, which we consolidate and restate as the following: Whether any genuine issue of material fact exists that landlord Gaw was an "owner" of her tenants' dogs for purposes of establishing liability under Indiana's Liability for Dog Bites Statute (Dog Bite Statute).

## FACTS AND PROCEDURAL HISTORY

The following facts are undisputed. At all relevant times, Fields was a mail carrier employed by the United States Postal Service. Jason McClurg (Jason) and Jill Fields[1] (Jill) resided at a home on 176th Street in Hammond, Indiana, that Jason had rented from the home's owner, Gaw, since at least 2009. Jason's lease provided that he could have up to two dogs or cats in the rental home. Jason and Jill owned two pit bull dogs that lived with them in the rental home. On June 1, 2019, Fields was delivering mail and was attacked by Jason and Jill's dogs.

---

[1] Jill is not related to the plaintiff, Fields.

On January 19, 2021, Fields filed her Complaint for damages, which she amended on March 3, 2021, alleging that Jason, Jill, and Gaw were "owners" of the dogs that attacked and bit her, such that they were all liable for her claimed injuries, lost wages, medical bills, and emotional trauma pursuant to the Dog Bite Statute, which defines a dog's "owner" in relevant part as one who "possesses, keeps, or harbors" a dog.

On August 26, 2022, Gaw filed her motion for summary judgment with memorandum and designation of evidence in support, arguing that, as a mere landlord, she had no common law duty of care to Fields concerning the dogs. In Gaw's Affidavit, she averred that since the beginning of their landlord/tenant relationship, Jason, not she, has had full possession or control of the rental property, she was not present at the property on June 1, 2019, and that she was not the owner of, nor did she control, any dog located at or near the rental property on June 1, 2019. Gaw also designated Jason's lease agreement for the rental property. On September 12, 2022, Fields filed her responsive materials in opposition to Gaw's summary judgment, and on September 14, 2022, Fields filed her cross-motion for summary judgment on liability as to all three defendants with a memorandum of law and designation of evidence in support, arguing that because Gaw's rental agreement with Jason had permitted Jason to have two dogs at the rental home, Gaw had harbored the dogs at issue, making her an "owner" of the dogs for purposes of the Dog Bite Statute. Neither party requested a hearing on its summary judgment motion, and none was held.

On October 20, 2022, the trial court issued its summary judgment, granting Gaw's motion for summary judgment and denying Fields' motion. The trial court found that the Dog Bite Statute did not apply to Gaw and only applied to "the owner of the dog at issue, who was absolutely not Gaw[,]" as "not even an inference was provided that supported [Fields'] argument that Gaw possessed, kept, or harbored the dog at issue." (Appellant's App. Vol. II, p. 14). The trial court also found that Gaw owed no common law duty of care to Fields.[2]

Fields now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Fields appeals the trial court's grant of Gaw's motion for summary judgment. Summary judgment is appropriate if the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). We review both the grant or denial of summary judgment de novo and apply the same standard as the trial court. *Kerr v. City of South Bend*, 48 N.E.3d 348, 352 (Ind. Ct. App. 2015). The party moving for summary judgment bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Sargent v. State*, 27 N.E.3d

---

[2] The trial court also denied Fields' motion for summary judgment as to Jason and Jill. Fields does not appeal that portion of the trial court's judgment.

729, 731 (Ind. 2015). "Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact." *Id.* at 731-32. "All disputed facts and doubts as to the existence of material facts must be resolved in favor of the non-moving party." *Kerr*, 48 N.E.3d at 352. If the facts are undisputed, we determine the law applicable to those facts, and whether the trial court correctly applied it. *King v. Ebrens*, 804 N.E.2d 821, 825 (Ind. Ct. App. 2004). We may affirm the trial court's summary judgment based on any theory supported by the designated evidence. *Haggerty v. Hoosier Energy Rural Elec. Co-op., Inc.*, 988 N.E.2d 1138, 1141 (Ind. Ct. App. 2013). Inasmuch as resolution of Fields' claims call upon us to interpret the Dog Bite Statute, those are matters which we also review de novo. *Service Steel Warehouse Co., L.P. v. U.S. Steel Corp.*, 182 N.E.3d 840, 842 (Ind. 2022).

[10] Before proceeding to the merits of Fields' claims, we observe that the trial court entered findings of fact and conclusions thereon. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. *Landlord as Owner for Purposes of the Dog Bite Statute*

[11] Fields contends, as she did below, that Gaw is an "owner" of Jason and Jill's dogs for purposes of establishing liability under the Dog Bite Statute and that

the trial court erred as a matter of law when it concluded otherwise.[3]  Therefore, we are called upon to construe the Dog Bite Statute.  When we engage in statutory construction, our goal is to discern and give effect to the legislature's intent in enacting the statute.  *Holcomb v. Bray*, 187 N.E.3d 1268, 1285 (Ind. 2022).  "We examine the statute as a whole, avoiding interpretations that depend on selective reading of individual words that lead to irrational and disharmonizing results."  *Lake Imaging, LLC v. Franciscan Alliance, Inc.*, 182 N.E.3d 203, 207 (Ind. 2022) (quotation omitted).  Our starting point is the language of the statute itself, and we first determine whether a statute is clear and unambiguous.  *Holcomb*, 187 N.E.3d at 1285.  A statute is only ambiguous if it is susceptible to more than one interpretation.  *Hopkins v. Indianapolis Pub. Schs.*, 183 N.E.3d 308, 312 (Ind. 2022).  When faced with an unambiguous statute, we need not apply any rules of construction, and we simply accord words their plain meaning.  *Ind. Off. of Utility Consumer Counselor v. S. Ind. Gas & Elec. Co.*, 200 N.E.3d 915, 919 (Ind. 2023).  "In determining the plain and ordinary meaning of a term, courts may use English language dictionaries as well as consider the relationship with other words and phrases."  *600 Land, Inc. v. Metro. Bd. of Zoning Appeals of Marion Cnty.*, 889 N.E.2d 305, 309 (Ind. 2008) (quotation omitted).

---

[3] Fields does not challenge the trial court's grant of summary judgment to Gaw based on common law liability principles.

[12] For our purposes, the Dog Bite Statute provides that the "owner" of a dog is liable for all damages suffered by a person who is bitten by the dog if the dog bites without provocation, the person is acting peaceably, and the person is in a location where the person is required to be in order to discharge a duty imposed on the person by the postal regulations of the United States. I.C. § 15-20-1-3(a). The owner is liable even if the dog has not previously behaved in a vicious manner or even if the owner has no knowledge of any prior vicious behavior by the dog. I.C. § 15-20-1-3(b). Our supreme court has recognized that in enacting the Dog Bite Statute, the legislature "clearly intended to change the common law and did so by explicitly removing the common law presumption that a dog is harmless unless it acts otherwise" and that "the effect of this statute is to render dog owners strictly liable if their dogs bite the described public servants without provocation." *Cook v. Whitesell-Sherman*, 796 N.E.2d 271, 273, 275 (Ind. 2003). The court concluded that "the statute reflects a policy choice that the dog's owner and keeper should bear the loss rather than the injured public employee." *Id*. at 276. Thus, under the Statute, a bitten postal worker has only to prove the identity of the dog's owner and that the dog bit without provocation. *See id*. at 276-77 (applying the Statute which was previously codified at I.C. § 15-5-12 and which defined "owner" in relevant part as including "a possessor, keeper, or harborer of a dog").

[13] The term "owner" is defined in the Dog Bite Statute as "the owner of a dog. The term includes a person who possesses, keeps, or harbors a dog." I.C. § 15-20-1-2. The terms "possesses, keeps, or harbors" are not further defined within

the Statute itself. Fields does not contend that there is any factual dispute that Gaw owned, possessed, or kept the dogs at issue. Rather, Fields argues that the undisputed facts show that Gaw, through entering into a lease which permitted Jason to have dogs at the rental property, harbored the dogs, rendering her an "owner."

In addressing Fields' claim, we initially observe that statutes in derogation of the common law are to be strictly construed because we assume that "the legislature does not intend by a statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication." *L.N.K. ex rel. Kavanaugh v. St. Mary's Med. Ctr.*, 785 N.E.2d 303, 306-07 (Ind. Ct. App. 2003), *trans. denied*. Neither party has directed us to any Indiana authority construing the term "harbors" in the context of the Dog Bite Statute. Therefore, we will begin our analysis by determining whether the term is clear and unambiguous. *Holcomb*, 187 N.E.3d at 1285. Gaw argues that the term "harbors" is unambiguous, while Fields takes no position and offers us alternate arguments regarding whether the term is ambiguous. However, we note that in *Cook*, our supreme court considered who is an "owner" while addressing Cook's argument that she was not an owner under the Statute because she was not in possession of her dog at the time it bit a postal worker. *Id.* at 274-75. Although the precise issue before us was not addressed by the court, the *Cook* court did not find the part of the Statute defining "owner" to be ambiguous; rather, it simply applied its terms and rejected Cook's argument. *Id.*

[15] We hold that the word "harbors" as used in the Statute is unambiguous and that it has a specific meaning within the context of a statute that concerns dogs. *See Carter v. Carolina Tobacco Co., Inc.*, 873 N.E.2d 611, 626 (Ind. Ct. App. 2007) (noting that, when interpreting a statute, it is necessary to consider the context of the words "because words that have one meaning in a particular context frequently have a different significance in another"). This court has resorted to the Corpus Juris Secundum to define the meaning of the term "keeper" for purposes of discerning liability in a general, common law dog bite case. *See Williams v. Pohlman*, 146 Ind. App. 523, 526, 257 N.E.2d 329, 331 (Ind. Ct. App. 1970). We do so here as well. "A person "harboring" a dog . . . is a person who affords lodging, shelters, or gives refuge to a dog for a limited purpose or time[.]" C.J.S. Animals § 379. In *Cook*, our supreme court noted that the then-current version of the Statute, Indiana Code section 15-5-12-2, expanded the definition of "owner" to include those who possess, keep, and harbor a dog, a class of people to whom the court referred as "custodians" of the animal, which indicates to us that something more than a mere rental agreement allowing pets must exist for a landlord to be a harborer of a dog for purposes of the Statute. *Cook*, 796 N.E.2d 274.

[16] We conclude that it is a person who directly lodges, shelters, or gives refuge to a dog who is harboring the dog, as opposed to a person who merely owns and rents out the place where the dog is lodged, sheltered, or provided refuge. Our reading of the Statute finds support in the law of other districts that have construed the term "harbor" or "harboring" in animal injury liability statutes

similarly defining "owner".  *See, e.g.*, *Whitten v. Luck*, 6 N.E.3d 866, 868-69 (Ill. App. Ct. 2014) (holding that landlords did not harbor tenant's dog and were thus not "owners" for purposes of the Illinois strict liability statute for damages caused by an animal defining "owner" in part as one who "harbors" an animal, where there was no evidence landlords provided food and shelter on at least a semipermanent basis, even where the lease allowed pets on the rental property and landlords knew tenants owned a dog), *trans. denied*; *see also Anderson v. Christopherson*, 816 N.W.2d 626, 632 (Minn. 2012) (holding that for purposes of Minnesota's strict liability dog injury statute defining "owner" as including "any person harboring" the dog, a person "harboring" a dog is one who "affords lodging, shelters, or gives refuge to a dog for a limited purpose or time" and noting that, under prior decisions, neither the mere right to exclude nor the possession of the land on which an animal is kept, even where coupled with permission given to a third person to keep it, is sufficient to convert a landlord into a "harborer" of the animal).

[17]   In light of *Cook*, we agree with Fields that our Dog Bite Statute clearly is intended to ease the burden of proof for those who are bitten in the execution of their mail carrying duties, but we find nothing in the wording of the Statute indicating through its "express terms or by unmistakable implication" that the legislature intended to expand the class of individuals liable for dog bites in the manner proposed by Fields.  *L.N.K. ex rel. Kavanaugh*, 785 N.E.2d at 306-07. Therefore, we reject Fields' contention that, as a matter of law, the mere existence of the landlord/tenant relationship brought Gaw within the definition

of an "owner" for purposes of the Dog Bite Statute. There is no factual dispute that Gaw provided housing to Jason through the rental agreement and allowed Jason to keep up to two dogs. However, there was no evidence designated creating a factual issue that Gaw had any interaction or contact with Jason's and Jill's dogs, let alone that she personally afforded their dogs lodging, shelter, or refuge. Accordingly, we do not disturb the trial court's summary judgment.

## CONCLUSION

[18] We hold that no genuine issue of material fact exists precluding summary judgment as to whether Gaw was an "owner" of the dogs at issue pursuant to the Dog Bite Statute.

[19] Affirmed.

[20] Altice, C. J. and Pyle, J. concur